### UNITED STATES of America,

### v.

Yin Poy LOUIE, Bing Far Yuen, Shiu Ping Wu, Robert Hu, Peter Chin, Wai Ho Tsang, Bok Min Paul Wong, David Wong, Jimmy Hsueh, Peter Chan, Jackie Mooi, Lenny Chow, Danny Tom, George Tom, Frankie Mooi, William Chin, Paul Wong, Daniel Lee, Steven Yau, Robert Hsu, Torran Chang, Kwai Ming Chow, Perry Hoo, Pak Tse, and Bing Yie Chan, Defendants.

No. 84 Cr. 1025 (RWS).

United States District Court, S.D. New York.

Dec. 24, 1985.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for the U.S.; Anne T. Vitale, Asst. U.S. Atty., Nancy Ryan, Sp. Asst. U.S. Atty., of counsel.

Olshan, Grundman & Frome, New York City, for defendant Yin Poy Louie; Elyse S. Goldweber, of counsel.

Susan Kellman, New York City, for defendant Peter Chin.

Roger Schwarz, New York City, for defendant Wai Ho Tsang.

Agulnick & Gogel, New York City, for Defendant Paul Wong; Barry W. Agulnick, of counsel.

Lecci, Wolin & Wolin, Hicksville, N.Y., for defendant David Wong; Jerold Wolin, of counsel.

Baden, Kramer, Huffman & Brodsky, P.C., New York City, for defendant Peter Chan; Richard L. Huffman, of counsel.

Lewis & Fiore, New York City, for defendant Jackie Mooi; David L. Lewis, of counsel.

Norman Corenthal, New York City, for defendant Lenny Chow.

Rochman, Platzer & Fallick, New York City, for defendant Danny Tom; Barry Fallick, of counsel.

Freeman, Nooter & Ginsberg, Thomas H. Nooter, New York City, for defendant Frankie Mooi.

Harry Batchelder, New York City, for defendant Steven Yau.

Jerry Tritz, New York City, for defendant Robert Hsu.

Thomas Liotti, Carle Place, N.Y., for defendant Torran Chang.

Emanual Moore, New York City, for defendant Kwai Ming Chow.

Daniel Noble, New York City, for defendant Perry Hoo.

Campos & Wojszwilo, New York City, for defendant Pak Tse; Richard Wojszwilo, of counsel.

David Cooper, New York City, for defendant William Chin.

Mathew J. Mari, New York City, for defendant Bing Yie Chan.

## OPINION

SWEET, District Judge.

Pretrial motions for severance, dismissal on the grounds of double jeopardy, and other relief were filed on behalf of certain of the defendants here and have been treated as having been made by all defendants similarly situated. Final submission and oral argument occurred on October 25, 1985. A review of the ninety-page indictment in light of these motions indicates that this action has been and promises to be a challenge for both prosecution and defense counsel, jurors and judiciary. Other than certain motions based on double jeopardy claims, the motions are denied except for certain relief with respect to the trial process which is granted, all of which is more fully set forth below.

### I. The Indictment

The indictment joins the following twenty-five defendants for trial: Yin Poy Louie; Bing Far Yuen; Shiu Ping Wu; Robert Hu; Peter Chin; Wai Ho Tsang; Paul Wong "Bok Min Paul"; David Wong; Jimmy Hsueh; Peter Chan; Jackie Mooi; Lenny Chow; Danny Tom; George Tom; Frankie Mooi; William Chin; Paul Wong; Daniel Lee; Steven Yau; Robert Hsu; Torran Chang; Kwai Ming Chow; Perry Hoo; Pak Tse; and Bing Yie Chan. However, five of these defendants, Bing Far Yuen, Shiu Ping Wu, Robert Hu, Bok Min Paul and George Tom, are fugitives and, therefore, will not be tried unless apprehended before the scheduled March 3, 1986 trial date.

The principal focus of this prosecution lies in Count One of the indictment which charges all twenty-five defendants with violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and Count Two which charges conspiracy to violate RICO, 18 U.S.C. § 1962(d). The indictment alleges that between 1971 and 1982 each of the defendants participated in and conspired to

participate in an enterprise through a pattern of racketeering activity. The enterprise identified in the indictment is a group comprised of young men of Chinese origin known as the "Ghost Shadows." This street gang allegedly dominated over Mott Street in the Chinatown area of New York City by engaging in various acts of criminal activity set forth in the eighty-five acts of racketeering which are alleged in chronological order, acts which include obstruction of justice, extortion, management of gambling businesses, robbery, kidnapping and murder. These numerous "predicate" acts are alleged to relate to the enterprise because they furthered the two principal goals of the group: obtaining money illegally from local persons and protecting the territory in which these money-raising activities occurred. Each defendant has been charged with at least two predicate acts; Pak Tse has been charged with three, the fewest number of acts, and Peter Chin is the individual charged with the greatest number of predicate acts which is twenty-four. Each defendant is charged with at least one act of racketeering involving conspiracy to murder.

While the acts of racketeering will be discussed in greater detail as required by the motions presented, the first two predicate acts are significant in that all twenty-five defendants are charged in Act of Racketeering One with a conspiracy to steal property by extortion and the theft of property by extortion from stores, businesses and restaurants from 1977 to 1982 [Par. 5(a), 5(b)]. All twenty-five defendants are also charged in Act of Racketeering Two with the conduct, management and supervision of illegal gambling houses operating on Mott Street in Manhattan between 1975 and 1982 [Par. 6]. The rest of the eighty-five acts of racketeering are then set forth in the remaining 89 paragraphs of Count I of the indictment. Count Two of the indictment charges all of the defendants with a racketeering conspiracy, that is, a conspiracy to conduct an enterprise through a pattern of racketeering between 1971 and 1982. 18 U.S.C. §§ 1961, 1962(d). Count Two relies upon each of the previously alleged eighty-five acts of racketeering to establish the pattern of racketeering.

Each of the ten remaining counts in the indictment reallege certain of the predicate acts as individual substantive offenses. Count Three charges David Wong and Peter Chan with conspiring to obstruct commerce by conspiring to rob the Cheung Yuen gambling house. 18 U.S.C. § 1951. Count Four charges the same two defendants with aiding and abetting the obstruction of commerce through the robbery of the Cheung Yuen gambling house. 18 U.S.C. §§ 2, 1951. Counts Five and Six charge the defendants Steven Yau and Kwai Ming Chow with, respectively, conspiracy to obstruct commerce by extortion and aiding and abetting such extortion from individuals at a store named the Ice Cream Factory. 18 U.S.C. §§ 2, 1951.

Counts Seven and Eight charge the same crimes of conspiracy and aiding and abetting the obstruction of commerce against defendants Danny Tom and Paul Wong, in connection with their attempted extortion of property from Wai Kang Leung. Count Nine charges Perry Hoo with aiding and abetting the obstruction of commerce through the robbery of individuals at a Hoinam Association. Finally, Counts Ten and Eleven charge Robert Hu with conspiring and aiding and abetting the obstruction of commerce through attempted extortion of individuals at the Four Seasons Health Spa. The last count, Count Twelve, alleges that Bing Far Yuen, Robert Hu, Peter Chin, Wai Ho Tsang and Jimmy Hsueh aided and abetted in an obstruction of justice in violation of 18 U.S.C. §§ 2, 1512.

## II. Existence of a Single Enterprise and Pattern of Racketeering Activity

Defendants' motion to dismiss the indictment for failure to allege properly the existence of an "enterprise" is denied. The indictment properly alleges the existence of an enterprise apart from the racketeering acts themselves and charges each of the defendants as being a member of this organization.

To establish a violation of RICO, of course, the government must demonstrate that there existed an enterprise: "a group of persons associated together for a common purpose of engaging in a course of conduct" or "an ongoing organization, formal or informal." *United States v. Turkette*, 452 U.S. 576, 583 n. 5, 101 S.Ct. 2524, 2528–29 n. 5, 69 L.Ed.2d 246 (1981). Such an organization need not be legitimate or otherwise recognized by law, for RICO is appropriately chargeable against persons who participate in an organization which is solely dedicated to committing unlawful activities. *See Turkette, supra*, 452 U.S. at 591, 101 S.Ct. at 2533.

■ The indictment properly charges the existence of a single enterprise, the Ghost Shadows street gang, which existed apart from any association of persons which existed for the mere purpose of committing a single criminal act. The indictment alleges that each of the defendants was either a leader, senior associate or junior associate in the gang and that the gang possessed a common purpose and provided services to its members. Certain of the predicate acts alleged, including extortion, robbery and attempted murder of members of competing gang, are alleged as support for the common purpose. Acts of Racketeering One and Two allege that all of the defendants engaged in the activities of the gang with respect to extortion and the management and operation of illegal gambling businesses. The indictment, therefore, properly alleges a single enterprise.

■ Defendants assert, however, that the various predicate acts alleged in the indictment lead irrevocably to the conclusion that the indictment cannot rationally be read as charging the existence of a single enterprise since several of the predicate acts charge that various defendants conspired or attempted to murder other defendants.

In this regard the indictment alleges in Acts of Racketeering Twenty, Twenty-One, Twenty-Two, Twenty-Three, and Twenty-Four, that in 1978, Peter Chin, Shiu Ping Wu, David Wong, Jimmy Hsueh, Robert Hsu, William Chin and George Tom either conspired, solicited or attempted to murder Yin Poy Louie.

By 1980, numerous alleged conspiracies and attempted murders took place involving defendants, both as perpetrators and as intended victims. At this time, according to the government, Yin Poy Louie had been forced off Mott Street and had organized a group of loyal followers known as the "White Tigers" which apparently included co-defendants Peter Chan and David Wong. In Acts of Racketeering Forty-Nine, Fifty, Fifty-One, Fifty-Two, Fifty-Five, Fifty-Nine, Sixty-One, Sixty-Five, Seventy-Six and Seventy-Seven, Peter Chin, Jackie Mooi, George Tom, Frankie Mooi, William Chin, Steven Yau, Bok Min Paul, Paul Wong, George Tom, Danny Tom, Robert Hu, Wai Ho Tsang, Torran Chang, Bing Yie Chan, Bing Far Yuen, and Jimmy Hsueh are charged with conspiring, soliciting, or attempting to murder members of the White Tigers, including David Wong. On the other hand, Louie, Peter Chan and David Wong are accused in Acts of Racketeering Sixty, Seventy, and Seventy-Five with conspiring and attempting to murder Peter Chin and Robert Hu in 1980.

Another factional dispute appears to have arisen between co-defendants who apparently remained on Mott Street and allegedly participated together in attempted killings of the White Tiger faction. In Acts of Racketeering Sixty-Nine, Seventy-One, Seventy-Two, and Seventy-Four, Robert Hu, Lenny Chow, Torran Chang, and Bing Yie Chan are accused of conspiring or attempting the murder of Peter Chin, Steven Yau or George Tom. The government, in its brief, explains these actions as retaliations directed by Robert Hu and his loyal followers against Peter Chin and his loyal followers for the earlier murder of Robert Hu's business associate which Hu believed was ordered by Peter Chin.

Whatever problems of proof are presented, these intra-defendant incidents do not require the dismissal of the RICO counts as a matter of law for failure to allege a single enterprise. The government con-

tends that these acts represent power struggles between various senior leaders of the single enterprise to take control of the enterprise and that the proof at trial will establish that the enterprise continued with a sufficient continuity of purpose and personnel to constitute an entity under the RICO statute. *See United States v. Errico*, 635 F.2d 152, 155 (2d Cir.1980). Defendants, of course, assert that these incidents demonstrate the absence of any common goal by their very nature.

However, a proper RICO allegation does not require that each member agree with the actions taken by other members of the enterprise but only that they intended to "participate in the enterprise." 18 U.S.C. § 1962(c). Moreover, a person's withdrawal from an enterprise at one point in time should not foreclose a prosecution for his earlier activities when a member of the enterprise. Finally, these intra-defendant incidents cannot be said to be unrelated to the enterprise as a matter of law. It is not necessary that a predicate act further the purpose for which the organization was founded but only that it be related to the enterprise either:

> when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise; or (2) the predicate offenses are related to the activities of that enterprise.

*U.S.A. v. Scotto*, 641 F.2d 47, 54 (2d Cir. 1980). In the *Scotto* case, the defendant, a labor union official, was shown to have accepted illegal payments from union employees. The Court held that the acceptance of kickbacks was sufficiently related to the conduct of the enterprise, *i.e.*, the labor union, to establish a RICO predicate act. Since, in this case, the alleged intra-defendant acts of violence may have been committed in order to enhance the position of the perpetrator within the enterprise, these acts are properly included in the indictment.

There will, of course, be included in the jury charge an appropriate instruction regarding the necessity of finding a relationship between each predicate act and the enterprise. The question for the jury, therefore, will be not only the action taken, but the motivation or intent underlying that criminal activity and the act's relationship to the enterprise. Of course, the mere fact that the intra-defendant acts may not have been successful is no reason to hold that the acts do not constitute predicate acts. *Scotto, supra*, 641 F.2d at 54 (deemed unnecessary for a person to actually enhance his position in the enterprise through the predicate acts).

■ The defendants further contend that the indictment does not adequately allege a "pattern" of racketeering activity. Section 1961(5) defines a "pattern of racketeering activity" as at least two "acts of racketeering activity" within a ten-year period. The Second Circuit has not required that the predicate acts be related to each other in the sense of possessing a "unitary character." *United States v. Weisman*, 624 F.2d 1118, 1122 (2d Cir.1980).

However, it is possible that the dicta in a recent Supreme Court opinion constricts this Circuit's definition of a pattern. In *United States v. Sedima*, — U.S. —, 105 S.Ct. 3275, n. 14, 87 L.Ed.2d 346 (1985), the Court quoted with approval from a Senate and House Report:

> The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern ...
>
> Significantly, in defining pattern in the same bill, Congress was more enlightening: 'criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'

Whatever change this statement will bring to RICO jurisprudence in this Circuit, the indictment, nevertheless, survives defend-

ants' challenge. The indictment alleges a broad spectrum of illegal fundraising acts and alleges territorial disputes between the Ghost Shadow enterprise and competing gangs. These acts on their face satisfy the most stringent requirement of "continuity and relationship."

## III. Double Jeopardy

Acts of Racketeering Thirteen, Twenty-Four, Twenty-Five, Sixty-Four, Sixty-Six, Sixty-Seven, Seventy-Three, Seventy-Five, and Eighty-One arise from transactions and activities which have previously been prosecuted in state courts, both in New York and Illinois. The defendants involved in these earlier prosecutions assert that a second prosecution on these charges violates the Double Jeopardy and Due Process Clauses of the Fifth Amendment.

Defendants' double jeopardy claims face several substantial difficulties. First, the constitutional protection against double jeopardy does not usually apply when the second prosecution is undertaken by a different sovereign.[1] *Heath v. Alabama*, — U.S. —, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). Furthermore, the Supreme Court's decision in *Garrett v. United States*, — U.S. —, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), casts doubt on the applicability of double jeopardy in the circumstance of a prosecution for a continuing enterprise offense following an earlier prosecution on a predicate act.

### A. Previous State Conviction as a RICO Predicate Act

■ In connection with Acts of Racketeering Thirteen, Twenty-Five, Sixty-Six, Sixty-Seven Seventy-Three, Seventy-Five,

and Eighty-One, the government intends to introduce as evidence the defendant's previous convictions in state court. In *Garrett*, the Court considered the applicability of the Double Jeopardy Clause in the context of the Comprehensive Drug Abuse Prevention and Control Act of 1970 which proscribes participation in a "continuing criminal enterprise," 21 U.S.C. § 848. The defendant, who previously had been convicted of the predicate act of importing drugs, argued that this earlier conviction was a "lesser included offense" of the "enterprise" violation which should bar the subsequent enterprise prosecution.

The Supreme Court, however, rejected this double jeopardy claim by distinguishing the predicate act/continuing enterprise offenses from the lesser included offense doctrine discussed in *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).[2] In distinguishing *Brown*, the Court focused on the temporal synchronization of the charges brought against the defendant in that case. "[E]very moment of [the defendant's] conduct" was relevant to both of the offenses for which the government sought prosecution in *Brown*. See *Garrett*, — U.S. at —, 105 S.Ct. at 2416. By contrast, the Court found that since the drug activity underlying the enterprise charge continued beyond the time period of the predicate act that these were offenses which were constitutionally different offenses rather than lesser and greater offenses. Thus the Court held that the defendant's interest in finality as protected by the Double Jeopardy Clause should not be used to bar subsequent prosecution when the illegal activity continues beyond

---

1. Defendants argue that this court should refuse to recognize the dual sovereignty doctrine based on the fact that the state prosecutor who obtained many of the prior convictions and acquittals is the same person who has been deputized by the federal government as a special prosecutor for this action. Since the court's analysis of a RICO prosecution does not depend on the traditional dual sovereignty doctrine, it is unnecessary to determine whether this federal prosecution is a mere "sham." See *United States v. Aboumoussallam*, 726 F.2d 906, 910 (2d Cir. 1984).

2. The Court also conclusively denied the defendant's interpretation of the continuing enterprise statute suggesting that multiple punishment was not contemplated by Congress. See *Garrett*, — U.S. at —, 105 S.Ct. at 2411–15. The Second Circuit has applied this reasoning to RICO which controls this aspect of defendant's double jeopardy argument. See *United States v. Persico*, 774 F.2d 30 (2d Cir.1985).

the initial prosecution. As explained by the Court, it would be improper to construe the Double Jeopardy Clause to force the government to choose between prosecution on the predicate act or waiting for further illegal activities before prosecuting the predicate act as part of an enterprise. *Id.* 105 S.Ct. at 2417.

Danny Tom argues that because he was incarcerated subsequent to his plea of guilty on the actions constituting Act of Racketeering Eighty-One, that he was not engaged in any post-conviction involvement in the enterprise. He, therefore, seeks to have this court adopt the reasoning of Justice O'Connor that "the defendant's interest in finality would be more compelling where there is no indication of continuing wrongdoing after the first prosecution." *Id. See also United States v. Persico,* 620 F.Supp. 836 (S.D.N.Y.1985), *aff'd,* 774 F.2d 30 (2d Cir.1985).

The Honorable John F. Keenan has held in *Persico, supra,* that a prior conviction of a racketeering act can be introduced in a subsequent RICO prosecution only where there exists either post-conviction unlawful conduct or post-conviction accumulation of evidence establishes involvement in the RICO enterprise. The Court of Appeals' affirmance in *Persico* did not, however, reach this issue. *See* 774 F.2d at 32. Danny Tom's claim is distinguishable from those underlying the *Persico* decision since his earlier conviction pursuant to a plea in state court resulted in incarceration and barred post conviction activity and thus squarely presents the question of whether the lack of post-conviction involvement in an enterprise precludes a RICO prosecution.

Despite Justice O'Connor's dicta, the *Garrett* decision is based on the principle that the government should not be forced to choose between a RICO prosecution and an underlying individual offense. This reasoning should apply equally to enterprise involvement prior to the state convictions, as well as post-conviction involvement.

The essential double jeopardy question turns not upon the time the prior crime was committed but upon the existence of separate and different elements to be established in the second crime charged, even though there are similar elements present in both charges. This is particularly appropriate here where Act of Racketeering Eighty-One, presumably to be established by his conviction, was obtained in state court. To require federal and state prosecutors to coordinate every prosecution and choose the offenses to be charged and jurisdiction for all time, goes beyond the present dictates of Double Jeopardy jurisprudence. *See Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959).

**B. Previous State Acquittal as a RICO Predicate Act**

■ Three defendants, Robert Hsu, Yin Poy Louie and Lenny Chow, have previously been tried and acquitted in state court on charges which arose from the same incidents as Acts of Racketeering Twenty-Four, Sixty-Four and Seventy-Five.[3] The double jeopardy claims of these defendants, therefore, stand on a different ground than those claims seeking to bar prosecution on a previously convicted action, since those two defendants assert both an interest in finality and an interest against trials by "attrition" where a defendant might be convicted merely because an alleged offense is reprosecuted. *See Ashe v. Swenson,* 397 U.S. 436, 447, 90 S.Ct. 1189, 1196, 25 L.Ed.2d 469 (1970) (holding that Double Jeopardy Clause prohibits prosecution from "treat[ing] the first trial as no more than a dry run for the second prosecution").

Again citing on Justice O'Connor's concurrence in *Garrett,* defendants urge that a prior acquittal on a predicate act should bar relitigation in a subsequent RICO pros-

---

**3.** Wai Ho Tsang was also indicted in the State of Illinois on the action underlying Act of Racketeering Sixty-Four. Since, however, the indictment was dismissed against him prior to trial, he cannot claim protection from the Double Jeopardy Clause. *See United States v. DiLapi,* 616 F.2d 613 (2d Cir.1980).

ecution. *See Garrett, supra,* 105 S.Ct. at 2422; *Ashe v. Swenson, supra.* That a prior acquittal on a predicate offense in federal court should bar relitigation in a RICO prosecution of any issues necessarily determined in favor of the defendant is apparently conceded by the government, for it instead relies on the dual sovereignty doctrine to deny the double jeopardy claims of Hsu, Louie and Chow.[4]

The dual sovereignty doctrine, which provides an exception to what would otherwise be patent violations of the Double Jeopardy Clause, was firmly embraced by the Supreme Court in the 1959 decisions of *Abbate v. United States, supra,* and *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). The policy continues to find strong support to this day. *See Heath v. Alabama, supra.* In *Heath* the Court discussed the principles underlying the dual sovereignty doctrine and held that these principles were equally applicable in the context of successive state prosecutions, as well as successive federal and state prosecutions. The Court explained that the dual sovereignty doctrine is founded:

> on the common law conception of crime as an offense against the sovereignity of the government. When a defendant in a single act violates the "peace and dignity" of two sovereigns by breaking the laws of each, he has committed two distinct offenses.

*Id.* ⸺ U.S. at ⸺, 106 S.Ct. at 437. At the core of the doctrine is the principle that each sovereign has a strong interest in determining the offenses which deserve punishment and in prosecuting those offenses without interference from the other sovereign. *See Bartkus, supra,* 359 U.S. at 137, 79 S.Ct. at 685 ("It would be in derogation of our federal system to displace the reserved power of the states over state offenses by reason of prosecution of minor federal offenses by federal authori-

ties beyond the control of the states."); *Abbate, supra,* 359 U.S. at 195, 79 S.Ct. at 671 ("Thus, unless the federal authorities could somehow insure that there would be no state prosecution for particular acts that also constitute federal offenses, the efficiency of federal law enforcement must suffer if the Double Jeopardy Clause presents successive state and federal prosecutions. Needless to say, it would be highly impractical for the federal authorities to attempt to keep informed of all state prosecutions which might bear on federal offenses.")

Because of this strong interest in defining and prosecuting offenses against a sovereign, the court in *Heath* refused to adopt an interest-balancing approach to the dual sovereignty doctrine which would examine whether each sovereign's prosecution was "necessary for the satisfaction" of that sovereign's legitimate interests. *Id.* ⸺ U.S. at ⸺, 106 S.Ct. at 439. Such an evaluation is inconsistent with the Court's reaffirmance of the principle that conduct proscribed by two sovereigns under nearly identical statutes are nevertheless different offenses under the Double Jeopardy Clause. *Id. See United States v. Lanza,* 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922).

▪ However, the Court's opinion in *Heath* neither addresses nor contemplates the unique issue posed by a successive federal prosecution under RICO relying upon prior state court convictions. RICO presents a unique dual sovereignty issue because the definition of racketeering activity incorporates state law by reference by providing that a broad category of acts which are "chargeable under State law and punishable by imprisonment for more than one year" may constitute predicate acts under RICO. Because of the incorporated state law definition of chargeable crimes, the separate sovereignty exception to a

---

**4.** The government has not addressed in its brief the principles underlying dual sovereignty doctrine nor the applicability of the doctrine in the context of a RICO prosecution. Instead, it merely relies upon decisions by the Third and

Fifth Circuits to substantiate its opposition to defendants' double jeopardy claims based on prior state court acquittals. *See United States v. Frumento,* 563 F.2d 1083 (3d Cir.1977); *United States v. Malatesta,* 583 F.2d 748 (5th Cir.1978).

double jeopardy claim is inapplicable in a RICO prosecution following a state acquittal. The activity which is one element of a RICO violation is, by definition, concurrent with another sovereign's expression of the actions which violate the "peace and dignity" of that sovereign state. Since the federal interest merely incorporates the state interest, none of the difficult prosecutorial conflicts noted in the *Abbate* and *Bartkus* opinions can possibly arise.

In addition, such a conclusion will serve the interests of comity in a federalist union. By recognizing and barring a subsequent prosecution on a state offense after an acquittal in state court, a federal court will accord due respect to the state court processes which resulted in acquittal. *See Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) (upholding applicability of collateral estoppel despite congressional intent in 28 U.S.C. § 1983 to provide a federal forum). There is no suggestion in the legislative history of RICO that Congress intended the retrial of state court actions which have resulted in acquittal. Since the federal prosecutors seek to introduce evidence of prior state court convictions as predicate acts, they should also be bound by prior state court acquittals under these peculiar circumstances presented by the RICO statute.

There exists a second non-constitutional basis for holding that an act on which a defendant has been acquitted in state court may not be used in a predicate act in a subsequent RICO prosecution. The definition of racketeering activity in 18 U.S.C. § 1961(1)(A) requires that an act be "chargeable" and "punishable" under state law. These requirements must be applied to the particular acts which are sought to be included in the RICO indictment. In this case, the acts committed by the defendants cannot be said to be chargeable or punishable as defined by § 1961(1)(A) since once the acquittals were rendered the defendants could no longer be chargeable with the same state offense arising from the particular acts. *See United States v. Frumento*, 563 F.2d 1083, 1096–97 (3d Cir. 1977) (Aldisert, J., dissenting).

While two circuits have come to the contrary conclusion, *see Frumento, supra; United States v. Malatesta*, 583 F.2d 748 (5th Cir.1978), this Circuit has adopted a more deferential approach in an analogous situation regulating international extradition proceedings. In *Sindona v. Grant*, 619 F.2d 167, 177–79 (2d Cir.1980), the Court of Appeals applied a broad transactional interpretation of the "Double Jeopardy" provision of an extradition treaty in deference to the foreign sovereign's interest in its criminal laws. A similarly deferential approach to the state judgment in this case counsels against the treatment adopted by the Third and Fifth Circuits of state court acquittals in RICO prosecutions. *Cf. United States v. Bagaric*, 706 F.2d 42, 62–63 (2d Cir.1983) (RICO prosecution cannot be based on racketeering acts "not prohibited *at all* under state law").

### C. Petite Policy

█ In further support of their double jeopardy claims, the defendants seek to have this court enforce the Justice Department's so-called *Petite* policy as a constitutional principle against subsequent federal prosecutions. The *Petite* policy is a prudential guideline through which the Justice Department bars a United States Attorney from instituting a federal prosecution following a state prosecution for the same act or acts "unless the reasons are compelling." *Rinaldi v. United States*, 434 U.S. 22, 24 n. 5, 98 S.Ct. 81, 82 n. 5, 54 L.Ed.2d 207 (1977). As explained in the *Rinaldi* opinion, the *Petite* policy was created in 1959 in response to the Supreme Court's holdings in *Bartkus* and *Abbate* that the Double Jeopardy Clause of the Constitution does not deny the state and federal governments the power to prosecute for the same act. "Although not constitutionally mandated, this executive policy serves to protect interests which, but for the 'dual sovereignty' principle interest in our federal system, would be replaced by the Double Jeopardy Clause." *Id.* at 29, 98 S.Ct. at 85. The policy does not, however, pertain to a RICO prosecution based upon acts which

have produced convictions since prosecution of such acts have been permitted even by single sovereign. *See Garrett, supra.*

Given the Supreme Court's respect for the purposes underlying the *Petite* policy, *see Thompson v. United States,* 444 U.S. 248, 100 S.Ct. 512, 62 L.Ed.2d 457 (1980), and given the absence in this action of any evidence regarding the Justice Department's consideration of this indictment in light of its standard proscription against multiple prosecutions, a further submission from the Justice Department on the subject may be filed. Without such filing, there is no evidence that the *Petite* policy has been satisfied, but under the law of this Circuit, the indictment cannot be dismissed on this basis. *See United States v. Ng,* 699 F.2d 63 (2d Cir.1983). However, if the policy is later invoked on the appellate level after a full trial has been conducted, the result could constitute a waste of trial resources. Therefore, while an evaluation of the *Petite* policy from the Executive would be welcome, it is not required.

Pursuant to Rules 7 and 12, Fed.R. Crim.P., and the above conclusions, Act of Racketeering Twenty-Four will be dismissed as against Robert Hsu; Act of Racketeering Seventy-Five will be dismissed as against Yin Poy Louie, and Act of Racketeering Sixty-Four will be dismissed as against Lenny Chow.[5]

## IV. Severance

Defendants have moved for severance and for separate trials pursuant to Fed.R. Crim.P. 8 and 14. It is common knowledge that at this writing there now pend in this court a number of complicated, protracted criminal cases. *United States v. Castellano,* 84 Cr. 63 (J. Duffy); *United States v. Baladameni,* 84 Cr. 236 (J. Leval); *United States v. Persico,* 84 Cr. 809 (J. Keenan). These cases strain the court's physical facilities, the ability of the judges involved to maintain a current calendar, the capacity of the defense counsel and the availability to provide adequate jurors. Much ink has

been spilled on the subject of the complicated multi-defendant criminal trial and judges in this district have employed and discussed various means to at the same time, alleviate this burden and improve the quality of the trials. The resulting efforts have ranged from severance, *Castellano, supra,* to endurance. *Baladameni, supra.*

■ As discussed above, the indictment charges all defendants with participation in and conspiracy to participate in a single enterprise. This single enterprise provides the "common link," *United States v. Bernstein,* 533 F.2d 775, 789 (2d Cir.1976), which satisfies the lawful joinder required of Rule 8, Fed.R.Cr.P., that defendants must be alleged to have participated "in the same series of acts or transactions." *See United States v. Arocena,* 778 F.2d 943 (2d Cir.1985). Thus it is the settled law of this Circuit that a RICO indictment properly joins all defendants who are alleged to have participated in the RICO enterprise. *United States v. Weisman,* 624 F.2d 1118 (2d Cir.1980); *United States v. Barton,* 647 F.2d 224 (2d Cir.1981).

A more substantial claim is presented by defendants' argument that they will be prejudiced by joinder of all the offenses and defendants in the extensive indictment and, therefore, severance should be ordered pursuant to Rule 14. The decision to grant severance pursuant to Rule 14 is delegated to the discretion of this court. *United States v. Potamitis,* 739 F.2d 784, 790 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 297, 83 L.Ed.2d 232 (1985).

Since all of the defendants are alleged to have participated in a single RICO enterprise and in a conspiracy to violate RICO, the government has presented a strong rationale for a joint trial of all conspirators and participants. If the government demonstrates participation in a single enterprise or single conspiracy, then much of the evidence in a joint trial would be admissible in any single trial, *United States v. Cohen,* 489 F.2d 945, 949–50 (2d Cir.1973), and

---

5. The dismissal of Act of Racketeering Sixty-Four against Lenny Chow moots his motion for suppression of the in-court identification in his previous state court trial.

therefore the joint trial should provide considerable savings of trial time, expense and effort on the part of witnesses. *See, United States v. Lyles,* 593 F.2d 182, 191 (2d Cir.1979); *United States v. Borelli,* 435 F.2d 500, 502 (2d Cir.1970).

■ Defendants contend, however, that due to the very large number of defendants on trial, twenty (the other five defendants are presently fugitives), and to the great number and confusing nature of the counts and predicate acts alleged, that the defendants will inevitably be denied a fair trial on their individual guilt. *See United States v. Bertolotti,* 529 F.2d 149 (2d Cir.1975); *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

Such claims of inherent unfairness have been dismissed in similarly larger trials. *See United States v. Moten,* 564 F.2d 620, 626 (2d Cir.1977) (twenty-two defendants); *United States v. Tramunti,* 513 F.2d 1087 (2d Cir.1975) (eighteen defendants); *United States v. Phillips,* 664 F.2d 971, 1016–17 (5th Cir.1981) (twelve defendants); *United States v. Tashjian,* 660 F.2d 829, 833–34 (1st Cir.1981) (fifteen defendants). The essential question is whether "the jury will be able to 'compartmentalize' the evidence presented to it and distinguish among the various defendants in a multi-defendant suit." *United States v. Abrams,* 539 F.Supp. 378, 381–82 (S.D.N.Y.1982). Through the use of jury instructions, special verdict forms and perhaps even a synopsis of the indictment delineating the charges against each individual defendant, the trial of this RICO prosecution will not be inherently unfair. Moreover, the court intends to present a preliminary jury charge at the inception of trial in order to provide an appropriate orientation to the RICO statute. None of these techniques were suggested or adopted by the Northern District of Georgia in *United States v. Caldwell,* 594 F.Supp. 548 (N.D.Ga., 1984), a case relied upon by defendants. Therefore, severance on this basis will be denied.

Defendants further claim, however, that they will be denied a fair trial because of the antagonistic defenses which will be as-serted by other defendants. Specifically, Yin Poy Louie asserts that his main defense will be to assert that the predicate acts of violence directed toward him evidence both his withdrawal from the Ghost Shadows and the desire of continuing members to punish him for his withdrawal.

While Yin Poy Louie presents the strongest example of the factional disputes between defendants, there are other predicate acts of violence directed towards some defendants by other defendants. *See* Part II, *supra.* Thus, there is a possibility that the trial will divide into factional disputes in which some defendants will seek to focus the blame on other groups of defendants. Such a development would create a risk of prejudice in a joint trial, *see United States v. Romanello,* 726 F.2d 173, (5th Cir.1984), even though it is also generally accepted that hostility among the defendants does not require severance pursuant to Rule 14. *See e.g., United States v. Potamitis,* 739 F.2d 784 (2d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 332, 83 L.Ed.2d 269 (1985); *United States v. Boyd,* 610 F.2d 521 (8th Cir.1979).

■ Yin Poy Louie and the other defendants who are alleged victims (Peter Chin, George Tom, David Wong and Robert Hu) are alleged to have participated in enough other predicate acts to qualify as members of the enterprise, despite the hostile acts against them. *Cf. Romanello, supra,* 726 F.2d at 177–78 (severance required where the "core of the defense" is antagonistic to another defendant). This case is quite different from *Romanello,* where in a prosecution for armed robbery of an airline shipment, the defendant airline employee accused his co-defendants of forcing him to turn over the shipment at gunpoint. There the antagonism permeated every aspect of the indictment. It is unlikely in the present action that the defendants will be able to rely on hostility as the core of their defense. Since only the testimony adduced at trial will permit a thorough analysis of this issue, severance on the basis of antagonistic defenses is not mandated at this time.

Finally, a few of the defendants who are alleged to be junior associates of the enterprise claim that their joint trial with the leaders of the enterprise is prejudicial because of the disparity of the quality and quantity of evidence to be asserted against each defendant. *See United States v. Kelly*, 349 F.2d 720, 759 (2d Cir.1965). There is a substantial disparity in the charges against Danny Tom, Lenny Chow and Pak Tse, in particular, as opposed to the charges asserted against others.

However, the government answers the motions for severance by reference to Counts One and Two, the RICO counts under which each defendant is charged, and to the possibility of retrying the elements of these counts more than twice, and argues that these considerations outweigh the interests of the defendants in separate trials.

**Proposed Order of Trial**

The principal claim for severance of the minor defendants here is that which is customarily asserted—the danger of spill-over, prejudice and guilt by association. *See Kelly, supra.* Here, as frequently, the danger is not imaginary, particularly given the inflammatory nature of certain of the racketeering acts charged, including twenty-six acts of racketeering which charge defendants with murder or attempted murder.

In an effort to control these problems and to avoid severance, the trial will be divided into three segments. The first segment will include only the non-RICO counts of the indictment (the "Substantive Counts"). Specifically this segment will include only Counts Three through Twelve. The second segment will present for trial all of Counts One and Two of the indictment (the "RICO Counts"), except the Acts of Racketeering which allege intra-defendant acts of violence. Finally, the third segment will try those intra-defendant acts excluded from the second segment, which are Acts of Racketeering Ten, Twenty, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Four, Forty-Nine, Fifty, Fifty-One, Fifty-Two, Fifty-Five, Fifty-Nine, Sixty, Sixty-One, Sixty-Five, Sixty-Eight, Sixty-Nine, Seventy, Seventy-One, Seventy-Two, Seventy-Four, Seventy-Six and Seventy-Seven.

The purpose of this three-stage trial procedure is to simplify and separate the issues, both legal and factual, to reduce any possible prejudice resulting from the joinder of the minor defendants, and to isolate certain of the potentially more violent evidence, while at the same time presenting all the evidence to the same jury in the same trial. As presently contemplated, the process will require separate openings, summations and charges for each segment. Counsel for each of the defendants charged on a particular segment will participate in that segment. Special verdicts will be reached for each segment. In addition, a preliminary charge describing the issues and the parties will be given. Included will be an instruction at the outset of the second and third segments as to the use of the results of the previously rendered special verdicts.

This ordering of the proof is within the discretion of the trial judge. *See Geders v. United States*, 425 U.S. 80, 87, 96 S.Ct. 1330, 1335, 47 L.Ed.2d 592 (1976); *United States v. Benedetto*, 571 F.2d 1246, 1248–49 (2d Cir.1978); *United States v. DiNapoli*, 557 F.2d 962, 965 (2d Cir.1977). However, since this possible improvement in the administration of the trial has not been considered by either the government or the defense, a further hearing as to the implications of this determination will be held on January 10, 1986 at 9:30 a.m., or at such other time as necessary to suit counsel's convenience. Leave is hereby granted to present any arguments and authorities the parties deem relevant. Also to be discussed at the hearing will be the trial schedule and the deadlines for submission, in advance of the trial, of the proposed charges and special verdicts.

## V. Drafting of the Indictment

### A. Multiplicity

 The indictment in this action includes eighty-five predicate acts underlying

the two RICO counts. Many of the predicate acts are broken into subparts such that a single transaction has been charged as punishable under several criminal statutes. Thus, forty-nine of the eighty-five predicate acts are separated into subacts such as conspiracy to rob and robbery, conspiracy to extort and extortion, or conspiracy to murder, attempted murder and murder. As a particular example, Act of Racketeering Forty-One includes as subparts the conspiracy to murder members of the "Eagles" gang at the Wo Hop Restaurant, the attempted murder of Louie Mok, and the actual murders of Man Jooi Wang and Yuk Tung. The defendants argue that such an indictment is multiplicitous since the government has "artificially" split single transactions into separate suboffenses.

Defendants' motion requesting dismissal of certain subparts is denied since the indictment does not create any artificial categories but rather separates and sets forth traditional criminal offenses which can be charged against a particular transaction. Moreover, most of the crimes alleged are not "multiplicitious" in the sense which that word is used in *United States v. Reed*, 639 F.2d 896, 904 (2d Cir.1981). As the *Reed* opinion explains, a typical multiplicity problem arises where a statute and an indictment charge a single offense involving many alleged victims or describes several methods by which the crime may have been committed. *Id.* Here, however, the government has alleged "violations of two distinct statutes, each with different elements." *Id.* at 905. Since each of the subjects alleged in the indictment is a valid criminal offense and since the multiple victim crimes alleged are not so many as to create inherent prejudice, the defendants' motion must be denied.

The Second Circuit has cautioned against the use of separate subacts arising out of one transaction or episode to constitute the multiple acts required for an enterprise or RICO conviction. *See United States v. Young*, 745 F.2d 733, 746 n. 1 (2d Cir.1984) (Newman, J., concurring); *United States v. Weisman*, 624 F.2d 1118, 1123 (2d Cir. 1980). The present indictment helps avoid

such a possibility of confusion by indicating on its face that each of the subacts can only constitute one predicate act. Together with appropriate jury instructions, the indictment presented in this form should avoid any prejudice to the defendants on the basis of multiplicity.

**B. Surplusage**

Defendants have moved to strike from the indictment language regarding the defendants' aliases, the hierachy of the gang and the general reference to "murder, robbery, kidnapping, bribery and extortion." A motion to strike surplusage is granted only where it is clear that the allegations are not relevant to the crime charged and are inflammatory or otherwise prejudicial. *United States v. Napolitano*, 552 F.Supp. 465, 480 (S.D.N.Y.1982); *United States v. Clayton*, 52 F.R.D. 360, 361 (S.D.N.Y. 1971).

The government has generously applauded this court's reasoning in the *Napolitano* opinion, *supra,* which refused to strike surplusage in a RICO prosecution. However, different cases and times produce different results. While the motion to strike surplusage will presently be denied, the court will remain cognizant of the government's burden to establish the necessity of each foreign phrase and nickname in determining whether or not to submit the indictment in its present form to the jury.

The indictment's description and categorization of the defendants as leaders, senior associates and junior associates are entirely relevant and perhaps even essential to the RICO counts for the purpose of demonstrating an enterprise. The structure of the enterprise and the role of each person are often the most relevant evidence of the "continuing unit" which constitutes a RICO enterprise. *United States v. Turkette, supra,* 452 U.S. at 583, 101 S.Ct. at 2528–29. *See Napolitano, supra,* 552 F.Supp. at 480; *Scotto, supra,* 641 F.2d at 54. The general description of the activities of the enterprises members is an accurate summary description of the many

predicate acts and therefore will not be stricken.

The use of aliases in the indictment is customary and may be relevant to the prosecution of the defendants. While the use of aliases in such a large prosecution is potentially confusing and prejudicial, these aliases may well be a supplemental method of identifying the defendants if evidence presented to the jury includes frequent references to their informal names. The motion to strike will be denied at this time subject to renewal after the pertinent evidence is presented at trial. *See United States v. Clark*, 541 F.2d 1016, 1018 (4th Cir.1976); *United States v. Castellano*, 610 F.Supp. 1359 (S.D.N.Y.1985). It is assumed, at this point, that the government's prosecutors have undertaken their affirmative obligation to "review their evidence to assure themselves that every alias or nickname alleged has a legitimate, evidentiary purpose." *Id.*

### VI. Prejudicial Preindictment Delay

■■■ Jackie Mooi has moved for dismissal of the entire indictment on the basis of prejudicial preindictment delay. He has alleged that the prosecution of this RICO indictment after the expiration of the New York statutes of limitations on the underlying substantive offenses presents an issue of prejudicial preindictment delay. This argument, if accepted, might preclude a great number of RICO prosecutions in contradiction to the purpose underlying RICO's expansive statute of limitations. Jackie Mooi has not cited any case which purports to restrict Congress' ability to enact such an expansive statute.

In *United States v. Menia*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971), the Supreme Court held that the "Due Process clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that ... pre-indictment delay ... caused substantial prejudice to [defendants'] right to a fair trial and that delay was an intentional device to gain tactical advantage over the accused." However, the Court has restrict-

ed the applicability of such a doctrine in cases where the preindictment delay is required by the government to continue its investigation into the alleged activity or to complete its consideration of the desireability of exact focus of the contemplated prosecution. The Court held in *United States v. Lovasco*, 431 U.S. 783, 786, 97 S.Ct. 2044, 2047, 52 L.Ed.2d 752 (1977), that "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time."

The *Lovasco* case controls the present claim asserted by defendants and, therefore, the motion to dismiss the indictment on the basis of prejudicial delay is denied. The defendants have not provided any basis to suggest either that their rights to a fair trial have been prejudiced by any delay or that the government has purposely caused a delay in the proceedings to gain an advantage. Given the absence of any factual basis for the motion, no hearing need be conducted on this issue.

### VII. Miscellaneous Claims

#### A. Factual basis for the indictment

■■■ Danny Tom's claim that his role in the alleged gambling operations of Act of Racketeering Two does not constitute a RICO predicate act is premature. Danny Tom relies on a description of his acts given in a detention hearing as setting forth all the facts which came before the grand jury. Such an argument is not sound as a factual matter since it is unknown what evidence was presented to the grand jury, nor does the argument have any legally persuasive force since "[a]n indictment returned by a legally constituted ... grand jury, ... if valid on its face, is enough to call for trial of the charges on the merits." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956); *United States v. Scachetti*, 668 F.2d 643, 646 (2d Cir.1982). Since Danny Tom has attacked not the facial validity of the indictment but rather the underlying merit of the factual evidence, his motion is denied.

For the same reason, David Wong's motion to dismiss Counts Three and Four of the indictment for an alleged insufficiency of evidence before the grand jury on the issue of whether a robbery affected interstate commerce will also be denied.

### B. Geaney Hearing

 Jackie Mooi has sought a hearing prior to trial in order to determine whether there exists a "fair preponderance of the independent non-hearsay evidence that the defendant was in fact a member of the conspiracy." *United States v. Terry*, 702 F.2d 299, 320 (2d Cir.1983). *See United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir.1969). The most convenient and generally most appropriate time for such a finding is during the trial when the evidence is actually presented, otherwise a pretrial hearing could potentially result in a substantial representation of the government's evidence before this court. Jackie Mooi has not presented any reasons or any evidence of prejudice which would justify such a major pretrial hearing.

### C. Inspection of jury selection records

As it is both unopposed by the government and supported by the dispositive case of *Test v. United States*, 420 U.S. 28, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975), Jackie Mooi's motion pursuant to 28 U.S.C. § 1867(f) for an order permitting inspection of records and papers used by the jury clerk of the Southern District of New York in connection with the jury selection process is hereby granted.

### D. Suppression of pedigree information

 Frankie Mooi seeks suppression of information he gave to the police in Houston, Texas due to the alleged failure of those authorities to notify Frankie Mooi of his rights as provided in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The information sought to be suppressed, however, is merely basic identifying information which is not suppressible under *Miranda*. *See United States v.*

*LaVallee*, 521 F.2d 1109, 1112–13 (2d Cir. 1975).

### E. Voir dire and daily copy

Jackie Mooi requests that this court permit attorney participation in the voir dire and requests daily copy of the trial transcripts. Both requests will be granted. However, attorney participation in the voir dire will be limited to two hours for the defense and no repetition of inquiries will be permitted.

### F. 3500 Material

During the trial, 3500 material will be produced on Friday to cover testimony anticipated on the following Monday and Tuesday, and on Monday for testimony anticipated on Wednesday and Thursday. All parties will be granted leave to alter this schedule as needed during the trial.

### G. Further Motions

Any motions required as a result of additional discovery may be made within the two weeks after the factual basis for such relief becomes apparent.

IT IS SO ORDERED.